# United States Bankruptcy Court
## Southern District of Indiana (Indianapolis)

Debtor:  CHARLES HENRY PETERSON II          Case No:   13-11602
AKA CHARLES H PETERSON
Joint Debtor:   TERRIE LANETTE PETERSON          Chapter 7
AKA TERRIE L. PETERSON

## REAFFIRMATION AGREEMENT COVERSHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008.   It may be filed by any party to the reaffirmation agreement.

1.   Creditor's Name: CitiMortgage, Inc

2.   Amount of the debt subject to this reaffirmation agreement:
     $152,226.06 on the date of the bankruptcy $151,623.09 to be paid under reaffirmation agreement.

3.   Annual Percentage rate of interest:    4.125% prior to Bankruptcy
     4.125% under reaffirmation agreement (X Fixed Rate   N/A Adjustable Rate)

4.   Repayment Terms (if fixed rate):    $ 694.24 per month for 473 months

5.   Collateral, if any, securing the debt:   Current market value: $ 104,760.00
     Description:   5947 CANDLEWICK DR, INDIANAPOLIS, IN  46228

6.   Does the creditor assert that the debt is non-dischargeable?  N/A Yes   X No
(If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is non-dischargeable.)

Debtor's Schedule I & J Entries

Debtor's Income and Expenses
as Stated on Reaffirmation Agreement

7A   Total monthly income from $ 3,673.62     7B   Monthly income from all  $ 3,673.62
     Schedule I, Line 16                              sources after payroll deduction.

8A   Total monthly expenses from  $ 3,630.00     8B   Monthly Expenses     $ 3,630.00

9A   Total monthly payments on     $ 0     9B   Total monthly payments on
     reaffirmed debts not listed on                      reaffirmation debts not included in
     Schedule J                                          monthly expenses     $ 0

                                                  10B   Net monthly income     $ 43.62
                                                        (Subtract sum of lines 8B and 9B from
                                                        line 7B. If total is less than zero,
                                                        put the number in brackets.)

11. Explain with specificity any difference between the income amounts (7A and 7B):

N/A

12. Explain with specificity any difference between the expense amounts (8A and 8B):

N/A

If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that any explanation contained on those lines is true and correct.

Signature of Debtor   (only required If Line 11 or 12 is completed)

Signature of Joint Debtor (if applicable and only required if line 11 or 12 is completed)

Other Information

[  ]    Check this box if the total on line 10B is less than zero.   If that number is less than zero, a presumption of undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt:

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
        ✓ Yes        _____ No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
        ✓ Yes        _____ No

## FILER'S CERTIFICATION

I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Reaffirmation Agreement Cover Sheet.

/s/ Tasha Wright
Signature

Tasha Wright/ BK Specialist III
Printed/Typed Name and Signer's Relation to Case

B240A (Form B240A) (04/10)

Check one.
[ ] **Presumption of Undue Hardship**
[✓] **No Presumption of Undue Hardship**
*See Debtor's Statement in Support of Reaffirmation,
Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
## Southern District of Indiana (Indianapolis)

In re <u>CHARLES HENRY   PETERSON II AKA CHARLES H. PETERSON,</u>
<u>TERRIE LANETTE PETERSON AKA TERRIE L. PETERSON</u>
*Debtor*                                       Case No. <u>13-11602</u>
                                              Chapter <u>7</u>

### REAFFIRMATION DOCUMENTS

### Name of Creditor: <u>**CitiMortgage, Inc**</u>

[ ] Check this box if Creditor is a Credit Union

## PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation
Agreement, you must review the important disclosures, instructions, and definitions found
in Part V of this form.**

A. Brief description of the original agreement being reaffirmed:  <u>Mortgage loan</u>
                                              *For example, auto loan*

B. *AMOUNT REAFFIRMED*: $<u>151,623.09</u>

> The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include
> unpaid principal, interest, and fees and costs (if any) arising on or before <u>February 26, 2014</u>,
> which is the date of the Disclosure Statement portion of this form (Part V).
>
> *See the definition of "Amount Reaffirmed" in Part V, Section C below.*
>
> C. The *ANNUAL PERCENTAGE RATE* applicable to the Amount Reaffirmed is <u>4.125</u> %.
>
> *See definition of "Annual Percentage Rate" in Part V, Section C below.*
>
> This is a *(check one)*    [<u>X</u>]  Fixed rate    [<u>N/A</u>] Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual
Percentage Rate disclosed here.

B240A, Reaffirmation Documents                                       Page 2

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

[X] $694.24 per month for 473 months starting on 03/01/14.

[N/A] Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.
N/A

E. Describe the collateral, if any, securing the debt:
Description: 5947 CANDLEWICK DR INDIANAPOLIS IN 46228
Current Market Value $104,760.00

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?
[X] Yes.   What was the purchase price for the collateral?   $131,282.74
[N/A]   No.   What was the amount of the original loan?      $N/A

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | | Terms After Reaffirmation |
|---|---|---|---|
| Balance due *(including fees and costs)* | $152,226.06 | $151,623.09 | |
| Annual Percentage Rate | 4.125% | | 4.125% |
| Monthly Payment | $694.24 | $694.24 | |

H. [ ]   Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:
———————————————— N/A ————————————————

## PART II. DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A.   Were you represented by an attorney during the course of negotiating this agreement?
Check one.   [√] Yes      [ ] No

B.   Is the creditor a credit union?
Check one.   [ ] Yes      [X] No

B240A, Reaffirmation Documents Page 3

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

  1. Your present monthly income and expenses are:

    a. Monthly income from all sources after payroll deductions
(take home pay plus any other income) $ _3,673.62_

    b. Monthly expenses (including all reaffirmed debts except this one) $ _2,936.00_

    c. Amount available to pay this reaffirmed debt (subtract b. from a.) $ _737.62_

    d. Amount of monthly payment required for this reaffirmed debt $694.24_

    *If the monthly payment on this reaffirmed debt (line d.) **is greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

  2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents cause:

    Check one of the two statements below, if applicable:

    [✓]    You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

    [ ]    You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

    _____

    _____

    Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

    [ ]    You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

    *Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

B240A, Reaffirmation Documents Page 4

**PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES**
I hereby certify that:

(1) I agree to reaffirm the debt described above.
(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and
(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 3/5/14    Signature _____
                                                    *Debtor*
Date 3/5/14    Signature _____
                                                    *Joint Debtor, if any*

**Reaffirmation Agreement Terms Accepted by Creditor:**
Creditor CitiMortgage, Inc    4600 Houston Rd. Florence, Ky 41042 blg 2 Flr2
            *Print Name*                            *Address*

Lakeisha E. Gibbs          /s/ Lakeisha E. Gibbs          3/5/14
*Print Name of Representative*          *Signature*                  *Date*

**PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)**
*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

[ ] A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.
*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 3-5-2014          Signature of Debtor's Attorney _____
                                    Print Name of Debtor's Attorney Brian D. Maannis

B240A, Reaffirmation Documents Page 5

**PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)**

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

**A.      DISCLOSURE STATEMENT**

1.           **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2.           **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3.           **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A ''lien'' is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4.           **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5.           **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

B240A, Reaffirmation Documents Page 6

6. **When will this Reaffirmation Agreement be effective?**

    a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

        **i.**      **if the creditor is not a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

        ii.      **if the creditor is a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court.

    b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

**B. INSTRUCTIONS**

1.    Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2.    Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3.    If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4.    You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5.    *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home.* You can use Form B240B to do this.

B240A, Reaffirmation Documents Page 7

## C.    DEFINITIONS

1.    **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2.    **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3.    "**Credit Union**" means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

B240B (Form B240B) (12/09)

# UNITED STATES BANKRUPTCY COURT
_____ **District of** _____

## MOTION FOR APPROVAL OF REAFFIRMATION AGREEMENT

I (we), the debtor(s), affirm the following to be true and correct:

I am not represented by an attorney in connection with this reaffirmation agreement.

I believe this reaffirmation agreement is in my best interest based on the income and expenses I have disclosed in my Statement in Support of Reaffirmation Agreement, and because *(provide any additional relevant reasons the court should consider)*:

Therefore, I ask the court for an order approving this reaffirmation agreement under the following provisions *(check all applicable boxes)*:

☐ 11 U.S.C. § 524(m) (presumption of undue hardship has arisen because monthly expenses exceed monthly income, as explained in Part II of Form B240A, Reaffirmation Documents)

☐ 11 U.S.C. § 524(c)(6) (debtor is not represented by an attorney during the course of the negotiation of the reaffirmation agreement)

Signed:_____
    *(Debtor)*
    _____
    *(Joint Debtor, if any)*

Date: _____

B240C (Form B240C) (12/09)

# United States Bankruptcy Court
_____District of _____

In re _____,          Case No.

Debtor          Chapter _____

☐ The court disapproves the reaffirmation agreement under   11 U.S.C. § 524(m).

## ORDER ON REAFFIRMATION AGREEMENT

The debtor(s) _____ has (have) filed a motion for approval of the reaffirmation agreement dated _____ made between the debtor(s) and creditor _____. The court held the hearing required by 11 U.S.C. § 524(d) on notice to the debtor(s) and the creditor on _____ (date).

COURT ORDER:

☐ The court grants the debtor's motion under 11 U.S.C. § 524(c)(6)(A) and approves the
    reaffirmation agreement described above as not imposing an undue hardship on the debtor(s)
    or a dependent of the debtor(s) and as being   in the best interest of the debtor(s).

☐ The court grants the debtor's motion under 11 U.S.C. § 524(k)(8) and approves the reaffirmation
    agreement described above.

☐ The court does not disapprove the reaffirmation agreement under 11 U.S.C. § 524(m).

☐ The court does not approve the reaffirmation agreement.

BY THE COURT

Date: _____

_____
*United States Bankruptcy Judge*
\_

**After Recording Return To:**
CitiMortgage, Inc.
1000 Technology Drive, MS 420R
O'Fallon, MO 63368
Doc Prep/Booking & Closing

This document was prepared by  Loan Modification Team
CitiMortgage
1000 Technology Drive, MS 420R
O'Fallon, MO  63368-2240



_____ **[Space Above This Line For Recording Data]** _____

# HOME AFFORDABLE MODIFICATION AGREEMENT

Borrower(s) ("I"): CHARLES H PETERSON, TERRIE L PETERSON, ,

Lender or Servicer ("Lender"): CitiMortgage, Inc. successor in interest by merger to CitiFinancial Mortgage Co, Inc.

*Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): 02/12/00*

Property Address ("Property"): 5947 CANDLEWICK DR, INDIANAPOLIS, IN  46228

Legal Description:   As per your Original Loan Documents

If my representations and covenants herein continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

1. **My Representations and Covenants**.  I certify, represent to Lender, covenant and agree:

    A.   I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents or my default is imminent, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

    B.   One of the borrowers signing this Agreement lives in the Property as a principal residence, and the Property has not been condemned;

    C.   There has been no impermissible change in the ownership of the Property since I signed the Loan Documents. A permissible change would be any transfer that the lender is required by law to allow, such as a transfer to add or remove a family member, spouse or domestic partner of the undersigned in the event of a death, divorce or marriage;

    D.   I have provided documentation for **all** income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when

requesting to qualify for the Home Affordable Modification Program ("Program"));

1 If more than one Borrower or Mortgagor is executing this document, each is referred to as "I." For purposes of this document
  words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

E.   Under penalty of perjury, all documents and information I have provided to Lender in
     connection with this Agreement, including the documents and information regarding my
     eligibility for the Program, are true and correct;

F.   If Lender requires me to obtain credit counseling in connection with the Program, I will do so;
     and

G.   I have made or will make all payments required under a Trial Period Plan or Loan Workout
     Plan.

2.   **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

     A.   If prior to the Modification Effective Date (as defined in Section 3), the Lender determines that
          any of my representations herein are no longer true and correct or any covenant by me has not
          been performed, the Loan Documents will not be modified and this Agreement will terminate.
          In that event, the Lender will have all of the rights and remedies provided by the Loan
          Documents; and

     B.   I understand that the Loan Documents will not be modified unless and until (i) the Lender
          accepts this Agreement by signing and returning a copy of it to me, and (ii) the Modification
          Effective Date (as defined in Section 3) has occurred. I further understand and agree that the
          Lender will not be obligated or bound to make any modification of the Loan Documents if I fail
          to meet any one of the requirements under this Agreement.

3.   **The Modification**. If my representations and covenants in Section 1 continue to be true in all
     material respects and all preconditions to the modification set forth in Section 2 have been met, the
     Loan Documents will automatically become modified on 07/01/13 (the "Modification Effective Date")
     and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to
     make any payments as a precondition to this modification under a trial period plan, this modification
     will not take effect. The first modified payment will be due on 08/01/13.

     A.   **Unpaid Principal Balance.** As of 07/01/13, the amount payable under the Note and the
          Security Instrument (the "Unpaid Principal Balance") is U.S. $151,034.94 consisting of the
          unpaid amounts loaned to Borrower, previously deferred amounts, if any, plus any interest
          and other amounts capitalized.

     B.   Waived or Forgiven Late Charges. For and in consideration of the modification of the loan as
          described herein, Lender has agreed to waive or forgive accrued, unpaid late charges subject
          to the Borrower's compliance with the terms of this Agreement. The total amount of accrued,
          unpaid late charges waived or forgiven is U.S. $ 0.00.

     C.   **Deferred Principal Balance.** For and in consideration of the modification of the loan as
          described herein, Lender has agreed to defer a portion of the Unpaid Principal Balance in
          an amount equal to $0.00("Deferred Principal Balance"). The Deferred Principal Balance, if
          any, is in addition to the Modified Principal Balance and shall continue to be due and owing
          by Borrower to Lender; provided, however, Lender agrees that for so long as Borrower
          makes the principal and interest payments in a timely manner and ultimately pays the
          Deferred Principal Balance to the extent obligated under the terms of the Note or Security
          Instrument, which if not sooner demanded, shall be due and payable upon the earlier of
          any voluntary loan payoff or on the Maturity Date, when the final balloon payment will
          become due and payable. Lender will not seek to enforce its security interest under the

terms of the Security Instrument solely for failure to pay the Deferred Principal Balance. Any deferred principal forgiveness will be reported to the Internal Revenue Service and may have tax consequences. Therefore, you are advised to seek guidance from a tax professional.

D.  **Principal Reduction Alternative**. You qualify for a total Principal Reduction Alternative in the amount of $30,411.75. You may be eligible to have some of your principal forgiven on a deferred basis.  If you make your monthly mortgage payments on time, we will forgive $10,137.25 of the principal balance of your loan each year on the anniversary of your first trial period payment date for three years.  You will lose this benefit if your modified loan loses good standing, which means that the equivalent of three full monthly payments are due and unpaid on the last day of any month, at any time during this three year period, including all accrued and unapplied amounts, even if the mortgage loan is later brought current. Any principal forgiveness will be reported to the Internal Revenue Service and may have tax consequences. Therefore, you are advised to seek guidance from a tax professional.

E.  **Modified Principal Balance.** Borrower acknowledges that the Modified Principal Balance payable under the Note and the Security Instrument shall be calculated as set forth below:

| | | |
|---|---|---|
| i. | Principal Balance | $146,547.23 |
| ii. | Accrued unpaid Interest | $ 4,274.27 |
| iii. | Accrued unpaid late charges | $ 0.00 |
| iv. | Advances regarding delinquent real estate taxes or to pay insurance premiums | $130.25 |
| v. | Appraisal fees, attorneys fees, costs, foreclosure or other legal expenses and advances regarding prior lien-holder or other claims | $ 83.19 |
| vi. | Previously deferred amounts | $0.00 |
| | Total (the "Unpaid Principal Balance" from Section 3(A)) | $151,034.94 |

Less:

| | |
|---|---|
| Forgiven Late Charges from Section 3(B) | $ 0.00 |
| Deferred Principal Balance from Section 3(C) | $0.00 |
| Principal Reduction from Section 3(D) | $30,411.75 |
| Appraisal fees, attorneys fees, costs, Foreclosure or other legal expenses and advances Regarding prior lien-holder or other claims | $83.19 |

Plus:

| | |
|---|---|
| Advances to establish initial escrow account, if any | $0.00 |
| Total (the "Modified Principal Balance") | $120,540.00 |

F.  **Repayment Terms.** Borrower promises to pay the Modified Principal Balance, plus interest, to the order of Lender as set forth below:

1). The Maturity Date, as hereinafter defined, is 07/01/53. If on the Maturity Date Borrower still owes amounts under the Note and Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

2). The interest rate will begin to accrue as of 07/01/13  and the first new monthly payment on the Modified Principal Balance will be due on 08/01/13.

3). $30,411.75 of the Unpaid Principal Balance shall be deferred and will be treated as a non-interest bearing principal forbearance.  I will not pay interest or make monthly

payments on the Deferred Principal Balance. In addition, $30,411.75, of the Deferred Principal Balance is eligible for forgiveness (the "Deferred Principal Reduction Amount"). Provided I am not in default on my new payments such that the equivalent of three full monthly payments are due and unpaid on the last day of any month, on each of the first, second and third anniversaries of 04/01/13, the Lender shall reduce the Deferred Principal Balance of my Note in installments equal to one-third of the Deferred Principal Reduction Amount. Application of the Deferred Principal Reduction Amount will not result in a new payment schedule. The Unpaid Principal Balance less the Deferred Principal Balance shall be referred to as the "Interest Bearing Principal Balance" and this amount is $ 120,540.00. Interest at the rate of 4.12500% will begin to accrue on the Interest Bearing Principal Balance as of 07/01/13 and the first new monthly payment on the Interest Bearing Principal Balance will be due on 08/01/13. My payment schedule for the modified Loan is as follows

| Years | Int Rate | Int Rate Change Date | Monthly Principal and Int Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|-------|----------|----------------------|------------------------------------------|------------------------------------------|------------------------|-------------------|-----------------------------|
| [1-term] | 4.1250 0 % | 07/01/13 | $ 513.19 | $ 178.27 Amount may adjust periodically | $ 691.46, may adjust periodically | 08/01/13 | [480] |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable, step or simple interest rate.

Any terms of the Note or Security Instrument which would result in any further interest rate reduction, including without limitation a Timely Payment Rewards program, or Smart Step program, are hereby deleted and will not be applicable to the Note as modified herein. Further, any terms of the Note or Security Instrument which provide for an adjustment of the interest rate are hereby deleted.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified Loan will be the minimum payment that will be due each month for the remaining term of the Loan. My modified Loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest being added to the outstanding principal balance.

I further understand that, provided I am not in default under the terms of this Agreement and I pay my Note in full (i) any time more than 30 calendar days after the Modification Effective Date, and (ii) prior to the application of the entire Deferred Principal Reduction Amount, I shall be fully vested in and entitled to the unapplied amount of the Deferred Principal Reduction Amount and the unapplied amount shall be deducted from my payoff balance.

THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE

PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATIED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

4.  I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

5..  I agree to pay in full the Deferred Principal Balance less any Deferred Principal Reduction Amount to which I am entitled, and any other amounts still owed under the Loan Documents by the earliest of: (i) the date I sell or transfer an interest in the Property, (ii) the date I pay the entire Interest Bearing Principal Balance, or (iii) the Maturity Date.

4.  **Additional Agreements**. I agree to the following:

A.  That all persons who signed the Loan Documents or their authorized representative(s) have signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B.  That this Agreement shall supersede the terms of any modification, forbearance, trial period plan or other workout plan that I previously entered into with Lender.

C.  To comply, except to the extent that they are modified by this Agreement, with all covenants, Agreements, and requirements of Loan Documents including my Agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D.  **Funds for Escrow Items.** I will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." I shall promptly furnish to Lender all notices of amounts to be paid under this Section 4.D. I shall pay Lender the Funds for Escrow Items unless Lender waives my obligation to pay the Funds for any or all Escrow Items. Lender may waive my obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, I shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. My obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If I am obligated to pay Escrow Items directly, pursuant to a waiver, and I fail to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and I shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, I shall pay to Lender all Funds, and in such amounts, that are then required under this Section 4.D.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable

estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay me any interest or earnings on the Funds. Lender and I can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide me, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to me for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify me as required by RESPA, and I shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to me any Funds held by Lender.

E. That the Loan Documents as modified by this Agreement are duly valid, binding Agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, if all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination Agreement(s) that are necessary or required by the

Lender's procedures to ensure that the modified mortgage Loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination Agreement(s), then the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K. That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Agreement if an error is detected after execution of this Agreement. I understand that either a corrected Agreement or a letter Agreement containing the correction will be provided to me for my signature. At Lender's option, this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrective documentation, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification Program.

L. That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the trial period plan and this Agreement by Lender to (i) the U.S. Department of the Treasury, (ii) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (iii) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (iv) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (v) any HUD certified housing counselor.

M. That if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the Loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the Note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the Note. All documents the Lender requests of me under this Agreement shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

N. That the mortgage insurance premiums on my Loan, if applicable, may increase as a result of the capitalization which will result in a higher total monthly payment. Furthermore, the date on which I may request cancellation of mortgage insurance may change as a result of the Modified Principal Balance.

O. I acknowledge that the Deferred Principal Balance set forth above may or may not be reflected in the loan amount reported by Lender to any credit reporting agency or reported as part of the balance on any receipt or statement issued by Lender, but nevertheless I acknowledge that such Deferred Principal Balance is due and payable as set forth above.

P. Notwithstanding the foregoing, to the extent personal liability has been discharged in bankruptcy with respect to any amount payable under the Note, as modified herein, nothing contained herein shall be construed to impose personal liability to repay any such obligation where any obligations have been so discharged. If any bankruptcy proceeding is pending or completed during a time period related to entering this Agreement, I understand that I enter this Agreement voluntarily and that this Agreement, or actions taken by the Lender in relation to this Agreement, does not constitute a demand for payment or any attempt to collect any such obligation.

[ ]   MERS LOAN. If this box is checked, the loan evidenced by the Note and secured by the Security Instrument was assigned to or the Security Instrument was prepared in the name of

Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of 1901 E Voorhees Street Suite C, Danville, IL 61834 or P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

EXECUTED effective as of the day and year first above written.

CHARLES H PETERSON

Date

TERRIE L PETERSON

Date

ACCEPTED AND AGREED TO BY:

CitiMortgage, Inc. successor in interest by merger to CitiFinancial Mortgage Co, Inc.

By: _____  9·16·13

Wilma Morris
Document Control Officer
CitiMortgage, Inc.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

State of Missouri        )
                         )
County of St Charles     )

On _____September 16, 2013_____, before me appeared <u>Wilma Morris</u>, to me personally known, being duly sworn or affirmed did say that she is a <u>Document Control Officer Of CitiMortgage, Inc.</u>, and that said instrument was signed on behalf of said corporation, by authority of its Board of Directors, <u>Wilma Morris</u>, acknowledged said instrument to be the free act and deed of said corporation, and that such individual made such appearance before the undersigned in the City of O'Fallon, State of Missouri.

Notary Public _____

```
TONJA BROOKS
Notary Public - Notary Seal
State of Missouri
Commissioned for St. Louis County
My Commission Expires: July 25, 2016
Commission Number: 12372473
```

# NOTE

| LENDER: | BORROWER: |
|---|---|
| Associates Home Equity Services, Inc. | CHARLES H. PETERSON and TERRIE L. PETERSON |
| 14415 S. 50th Street, Suite 100 Phoenix, AZ 85044 | 5947 CANDLEWICK DRIVE INDIANAPOLIS, IN 46228 |

| LOAN DATE | PRINCIPAL | MATURITY DATE AND FINAL PAYMENT DATE |
|---|---|---|
| 02/12/2000 | $ 131,282.74 | 03/01/2030 |

"I,""me" and "my" refer to the borrower(s) named above. "You" and "your" refer to the lender named above.

**REPAYMENT**

I promise to pay you, at your office, the address of which is shown above, or at a different place if required by you, the Principal stated above together with interest calculated at the Agreed Rate of Interest shown below until fully paid.

I will repay my loan by making the monthly payments set forth in the Payment Schedule below. Payments will be made on the same date of every month beginning on the First Payment Date until the loan is fully paid. If there is no such date in any month that follows, payment will be made on the last day of that month.

My monthly payments will be applied to interest before principal. If I still owe amounts under this Note on the Maturity Date, I will pay those amounts in full on that date.

Payment(s) in the amount(s) shown below will be due monthly as shown below.

| AMOUNT | DUE DATE(S) |
|---|---|
| $     1,290.07 | Beginning 04/01/2000 |

All amounts                                                                        ove.

| | |
|---|---|
| [x] | If this box is checked, the following provision applies. |

My loan is payable in full at the end of   30   year(s). A payment of $   1,290.07 and all other amounts owed will be due and payable on the Final Payment Date shown above. The Alternative Mortgage Transaction Parity Act of 1982 governs this loan.

**AGREED RATE OF INTEREST**

The Agreed Rate of Interest on my loan is   11.400   % except as stated below.

| | |
|---|---|
| [ ] | If this box is checked, the following provision applies. |

From the effective date(s) shown below and for            months thereafter, the Agreed Rate of Interest on my loan will be:

| AGREED RATE OF INTEREST | EFFECTIVE DATE |
|---|---|
| | |

Then the Agreed Rate of Interest will be that first stated above.

I agree to pay interest on the principal balance remaining after the Maturity Date shown above at the Agreed Rate of Interest in effect on that date, until the loan is paid in full.

**DEFAULT**

I will be in default if I fail to pay any payment or part of a payment on time or if I fail to comply with any of the terms of the Mortgage on the real estate given as security for this loan.

If I default, you have the right to declare the entire unpaid amount of my loan immediately due and payable without giving me notice of the default or asking me to pay. If you declare the balance of my loan due and payable, you have the rights and remedies provided for in the Mortgage that secures this loan, including the right to require me to pay any deficiency.

**NOTICE: See additional pages for additional loan terms.**

ATTORNEY FEES
I agree to pay reasonable attorney's fees if this Note is referred for collection to an attorney who is not your salaried employee.

PREPAYMENT
I have the right to make prepayments of principal at any time. When I make a prepayment I will tell you on my payment coupon. All prepayments will be applied to applicable charges with the remainder to principal. If I make a principal prepayment there will be no changes in the due dates or changes to the amount of my monthly payment unless you agree in writing to those delays or changes. If I prepay in full, no part of the loan fee will be refunded.

PREPAYMENT
PENALTY

> [X]  *If this box is checked, the following provision applies.*
>
> If an amount in excess of twenty percent (20%) of the Principal stated above is prepaid in any 12-month period within  3  year(s) from the Loan Date, I agree to pay a prepayment penalty in an amount equal to  6  months interest at the Agreed Rate of Interest on the amount prepaid in excess of twenty percent (20%) of the Principal stated above.
>
> However, this provision shall not apply if I prepay the loan in full with the proceeds of another loan from you or one of your affiliates.

BAD CHECK
CHARGE
If any check or instrument given as payment on this indebtedness is dishonored, I agree to pay you a service charge of $20.00.

DELAY IN
ENFORCEMENT
You can delay enforcing your rights under this Note without losing them. If I default in complying with any of the terms of my loan and you do not declare the loan balance immediately due and payable, this does not mean you cannot do so in the future if I default again.

SECURITY FOR
THIS LOAN
I give you a Mortgage dated the same date as this Note to assure payment of my loan.

ARBITRATION
The parties have on this date entered into a separate Arbitration Agreement, the terms of which are incorporated herein and made a part hereof by reference.

The Federal Depository Institutions Deregulation and Monetary Control Act of 1980 governs certain provisions of this loan.

**BY SIGNING IN THE SPACE BELOW, I ACKNOWLEDGE THAT I HAVE RECEIVED A FULLY COMPLETED COPY OF THIS NOTE.**

_____          _____  2-16-00
(Witness)                                CHARLES H. PETERSON          (Borrower)(Date)

_____          _____  2/16/00
(Witness)                                TERRIE L. PETERSON          (Borrower)(Date)

_____
(Borrower)(Date)

_____
(Borrower)(Date)

NOTICE: See additional pages for additional loan terms.

FIXED RATE NOTE                          Page 2 of 2

**THIS RIDER AMENDS THE LOAN AGREEMENT/PROMISSORY
NOTE ENTERED INTO ON DATE BELOW.**

## ASSOCIATES FREEDOM LOAN
## AGREED RATE REDUCTION RIDER  *

ON TIME
PAYMENTS AND
INITIAL RATE
REDUCTION

If at any time during the term of this loan, you make twelve consecutive full monthly payments in a row without ever during that time being or becoming thirty or more days contractually delinquent (that is, you are not delinquent at the time you make the first of twelve monthly payments and you make each of the twelve monthly payments any time between its due date and the day prior to the next payment's scheduled due date) ("On Time Payments"), we will reduce your Agreed Rate of Interest by one-half of one percentage point (.50%). You may only earn this initial rate reduction once over the life of this loan.

FURTHER
RATE
REDUCTION

If, after receiving a .50% reduction to your Agreed Rate of Interest as described in Paragraph One, you make twelve more consecutive On Time Payments, immediately following the first rate reduction, we will reduce your Agreed Rate of Interest by an additional three-quarters of a percentage point (.75%). This rate reduction can only be earned once over the life of this loan.

If, after receiving a .75% reduction to your Agreed Rate of Interest as described in Paragraph Two, you make twelve more consecutive On Time Payments, immediately following the second rate reduction, we will reduce your Agreed Rate of Interest by an additional one percentage point (1.00%). This rate reduction can only be earned once over the life of this loan.

LIMITATIONS
AND MINIMUM
RATE

Your Agreed Rate of Interest will never be reduced more than two and one-fourths (2.25%) percentage points over the life of the loan. All rate reductions made pursuant to this Rider are subject to a minimum rate requirement of the highest Prime Rate as disclosed in the Money Rates section of the Wall Street Journal on the effective date of your rate reduction as described in this Rider, plus one percentage point (1.00%).

EFFECTIVE
DATE OF RATE
AND PAYMENT
CHANGE

If you are entitled to a reduction in your Agreed Rate of Interest pursuant to this Rider, the reduction will be effective the day after the scheduled due date of the payment that qualifies you for the rate reduction. The monthly payment amount will likewise be modified, effective on the first monthly payment due date after the rate reduction is effective. The modification of the monthly payment amount will be based on the scheduled loan balance. However, if you prepay your account in full during the month in which the rate reduction is to occur, there will be no rate reduction.

In general, if this loan is a refinancing of an existing loan (even a refinancing of an existing loan from the same lender), then payments made and rate reductions received, if any, on the prior loan will not be considered in determining the timing and amount of rate reductions on this loan.

| | |
|---|---|
| _Charles H. Peter_    2-16-00 | _Terrie A. Peterson_  2/16/00 |
| Borrower    CHARLES H. PETERSON | Co-Borrower    TERRIE L. PETERSON |
| _____ | _____ |
| Date | Date |

\*    This Agreed Rate Reduction Rider and the rate reduction program it discusses does not apply to variable rate or adjustable rate loans, nor to loans made to finance the purchase of real property from lender.

**ASSOCIATES FREEDOM LOAN
AGREED RATE REDUCTION RIDER**

## NAME AFFIDAVIT

Before me, the undersigned authority, this day personally appeared  Charles Henry Peterson II

("Affiant") who being by me first duly sworn, affirmed as follows:

Affiant is one and the same person as: _Charles H Peterson

(SIGNATURE)

(PRINT NAME OF AFFIANT)

STATE OF _Indiana_

COUNTY OF _Marion_

(Printed name of Notary)

Sworn to and subscribed before me this 6th day of March , 2014, by Charles Peterson II

who was personally known to me or who presented _Drivers License_ as

identification.

(Signature of Notary)

Commission No.
Commission Expiration: 1/7/17

Please Return To:
Associates Home Equity Services, Inc.

3113 Skyway Circle North
Irving, TX 75038
Attn: Document Follow-Up Dept.

## REAL ESTATE MORTGAGE

This mortgage made on   February 12, 2000   , between   CHARLES H. PETERSON, HUSBAND AND
TERRIE L. PETERSON, WIFE

hereinafter referred to as MORTGAGOR(S), and   Associates Home Equity Services, Inc.

whose address is   14415 S. 50th Street, Suite 100, Phoenix, AZ 85044
, hereinafter
referred to as MORTGAGEE.

WITNESSETH:  Mortgagor(s) jointly and severally grants, bargains, sells, conveys and mortgages to Mortgagee, its successors and assigns, the real property hereinafter described, as security for the payment of a Note of even date herewith in the amount of $   131,282.74   , together with interest as provided in the Note which has a final payment date of   March 1, 2030   .

The property hereby mortgaged, and described below, includes all improvements and fixtures now attached together with easements, rights, privileges, interests, rents and profits.

TO HAVE AND TO HOLD the said property hereinafter described, with all the privileges and appurtenances thereunto belonging unto Mortgagee, its successors and assigns, forever; and Mortgagor(s) hereby covenants that Mortgagor(s) is seised of good and perfect title to said property in fee simple and has authority to convey the same, that the title so conveyed is clear, free and unencumbered except as hereinafter appears, and that Mortgagor(s) will forever warrant and defend the same unto Mortgagee against all claims whatsoever except those prior encumbrances, if any, hereinafter shown.

If Mortgagor(s) shall fully perform all the terms and conditions of this mortgage and shall pay in full in accordance with its terms, the obligations which this mortgage secures, then this mortgage shall be null, void and of no further force and effect.

**MORTGAGOR(S) AGREES:** To keep the mortgaged property, including the buildings and improvements thereon, fully insured at all times against all hazards with an insurance company authorized to do business in the State of Indiana, acceptable to Mortgagee, which policy shall contain a loss-payable clause in favor of Mortgagee as its interest may appear, and if Mortgagor(s) fails to do so, it hereby authorizes Mortgagee to insure or renew insurance on said property in a sum not exceeding the amount of the indebtedness of Mortgagor(s) for a period not exceeding the term of such indebtedness and to charge Mortgagor(s) with the premium thereon, or to add such premium to the indebtedness of Mortgagor(s).  If Mortgagee elects to waive such insurance Mortgagor(s) agrees to be fully responsible for damage or loss resulting from any cause whatsoever.  Mortgagor(s) agrees that any sums advanced or expended by Mortgagee for the protection or preservation of the property shall be repaid upon demand and if not so paid shall be secured hereby.  Mortgagor(s) further agrees:  To pay all taxes, assessments, bills for repairs and any other expenses incident to the ownership of the mortgaged property when due in order that no lien superior to that of this mortgage and not now existing may be created against the property during the term of this mortgage, and to pay, when due, all installments of interest and principal on account of any indebtedness which may be secured by a lien superior to the lien of this mortgage and existing on the date hereof.  If Mortgagor(s) fails to make any of the foregoing payments, it hereby authorizes Mortgagee to pay the same on its behalf, and to charge Mortgagor(s) with the amount so paid, adding the same to the indebtedness of Mortgagor(s) secured hereby.  To exercise due diligence in the operation , management and occupation of the mortgaged property and improvements thereon, and not to commit or allow waste on the mortgaged premises, and to keep the mortgaged property in its present condition and repair, normal and ordinary depreciation excepted.

If default be made in the terms or conditions of the debt or debts hereby secured or of any of the terms of this mortgage, or in the payment of any installments when due, or if Mortgagor(s) shall become bankrupt or insolvent, or make an assignment for the benefit of creditors, or have a receiver appointed, or should the mortgaged property or any part thereof be attached, levied upon or seised, or if any of the representations, warranties or statements of Mortgagor(s) herein contained be incorrect or if the Mortgagor(s) shall abandon the mortgaged property, or sell or attempt to sell all or any part of the same, then the whole amount hereby secured shall, at Mortgagee's option, become immediately due and payable, without notice or demand, and shall be collectible in a suit at law or by foreclosure of this mortgage.  In any case, regardless of such enforcement, Mortgagee shall be entitled to the immediate possession of the mortgaged property with the rents, issues, income and profits therefrom, with or without foreclosure or other proceedings.  Mortgagor(s) shall pay all costs which may be incurred or paid by Mortgagee in connection with any suit or proceeding to which it may be a party by reason of the execution or existence of this mortgage and in the event of foreclosure of this mortgage, Mortgagor(s) will pay to the Mortgagee, in addition to taxable costs and a reasonable fee for the search made and preparation for such foreclosure, all other and further expenses of foreclosure and sale, including expenses, fees and payments made to prevent or remove the imposition of liens or claims against the property and expenses of upkeep and repair made in order to place the same in a condition to be sold.

No failure on the part of Mortgagee to exercise any of its rights hereunder for defaults or breaches of covenant shall be construed to prejudice its rights in the event of any other or subsequent defaults or breaches of covenant, and no delay on the part of Mortgagee in exercising any of such rights shall be construed to preclude it from the exercise thereof at any time during the continuance of any such default or breach of covenant, and Mortgagee may enforce any one or more remedies hereunder successively or concurrently at its option.

04/11/00 11:45AM WANDA MARTIN MARION CTY RECORDER      MEM   13.00  PAGES:  3

Inst #

All rights and obligations hereunder shall extend to and be binding upon the several heirs, successors, executors, administrators and assigns of the parties hereto.

The plural as used in this instrument shall include the singular where applicable.

The real property hereby mortgaged is located in        MARION        County, State of Indiana, and is described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

also known as:  5947 CANDLEWICK DRIVE, INDIANAPOLIS, IN 46228

IN WITNESS WHEREOF  Mortgagor(s) has executed this mortgage on the day above shown.

_____ (Mortgagor)
CHARLES H. PETERSON

_____ (Mortgagor)
TERRIE L. PETERSON

_____ (Mortgagor)

_____ (Mortgagor)


### ACKNOWLEDGMENT BY INDIVIDUAL OR PARTNERSHIP BORROWER

STATE OF INDIANA, COUNTY OF _____Marion_____, SS

Before me, the undersigned, a notary public in and for said county and state, personally appeared     CHARLES H. PETERSON and TERRIE L. PETERSON

and acknowledged the execution of the foregoing mortgage.

IN WITNESS WHEREOF  I have hereunder subscribed my name and affixed my official seal this _____16th_____ day of
_February_____ _2000_____ .

My commission expires:

JODI STONE
SEAL
Notary Public, State of Indiana
Marion Co. Resident
My Commission Expires April 10, 2007

_____ NOTARY PUBLIC

_Jodi Stone_____ _Marion__
NOTARY:  PLEASE PRINT NAME AND COUNTY

This instrument was prepared by William H. Peirson, 4400 Alpha Road, Dallas, TX 75244

SECURITY INSTRUMENT 1st/2nd            Page 2 of 2

JODI STONE
SEAL
Notary Public, State of Indiana
Marion Co., Resident
My Commission Expires April 10, 2007

The land referred to in this Commitment is described as follows:

LOT NUMBERED 48 IN SADDLEBROOK NORTH SECTION 1, A SUBDIVISION IN MARION COUNTY, INDIANA, AS PER PLAT THEREOF RECORDED MARCH 10, 1995 AS INSTRUMENT _____ , IN THE OFFICE OF THE RECORDER OF MARION COUNTY, INDIANA.

CT CORPORATION

**CERTIFICATE OF AMENDMENT
OF THE CERTIFICATE OF INCORPORATION
OF
Associates Home Equity Services, Inc.
UNDER SECTION 805 OF THE BUSINESS CORPORATION LAW**

1.  The name of the corporation is Associates Home Equity Services, Inc.

2.  The Certificate of Incorporation of said corporation was filed by the Department of State on February 24, 1967 and under the original name of Homemakers Finance Service, Inc.

3.  (a)  The Certificate of Incorporation is amended to change Article First relating to the name is hereby amended.

    (b)  To effect the foregoing, Article First is amended to read as follows:

        1.  The name of the corporation is CitiFinancial Mortgage Company, Inc.

4.  The amendment was authorized in the following manner: By unanimous written consent of the Board of Directors followed by unanimous written consent of shareholders.

Terri Baer, Assistant
Secretary

CT CORPORATION

*State of New York,*

*Banking Department*

I, Paul J. Fazio, Deputy Superintendent of Banks of the State of New York, hereby approve, pursuant to New York Business Corporation Law Section 301 (a) (5) (B) the use of the word or a derivative of the word "mortgage" and "finance" in the corporate title of:

CitiFinancial Mortgage Company, Inc.

*Witness, my hand and official seal of the Banking Department at the City of New York. this 27th day of April in the Year Two thousand and one.*

*Deputy Superintendent of Banks*

TOTAL P.03

CT CORPORATION

**CERTIFICATE OF AMENDMENT**

**OF**

**ASSOCIATES HOME EQUITY SERVICE, INC.**

UNDER SECTION 805 OF THE
BUSINESS CORPORATION LAW

STATE OF NEW YORK
DEPARTMENT OF STATE

APR 3 0 2001

FILED
M/S _____
at _____

New York

CitiFinancial, Inc.
300 Saint Paul Place
Baltimore, MD 21202

DRAWDOWN

# State of New York
# Department of State  } ss:

I hereby certify, that Certificate of Merger, CITIFINANCIAL MORTGAGE COMPANY, INC., with and into CITIMORTGAGE, INC., was filed with this office 06/29/2006. The effective date of the merger was 07/01/2006.

A Certificate of Amendment BT INTERNATIONAL TRADING CORPORATION, changing

CITIMORTGAGE, INC., was filed 05/04/2005.
                                        ***

*WITNESS my hand and the official seal of the Department of State at the City of Albany, this 30th day of June two thousand and six.*

*Special Deputy Secretary of State*